JULY TERM, 1882, No. 81.                    JANUARY 12, 1883.

## Appeal of the Pennsylvania Industrial Home for Blind Women.

A testatrix devised and bequeathed one sixth of her residuary estate to the "Institution for the Blind of Philadelphia." There were two institutions for the blind in Philadelphia, one the "Pennsylvania Institution for the Instruction of the Blind," and the other the "Pennsylvania Industrial Home for Blind Women," both of which claimed the legacy. There was evidence that the former was commonly known as the "Institution for the Blind," and so advertised itself in a paper taken by the testatrix. To the latter institution the testatrix had been a contributor for eleven years. She had attended its entertainments, and had expressed an interest in its welfare. In her private memorandum-book she had entered her contributions to it, along with other contributions to one of her legatees, and in ten of the twelve entries had given its name correctly. *Held,* That the testatrix, well knowing the correct name of the latter, and not having used it in her will, and having used the name by which the former was popularly and well known, there was no error in awarding the fund to the "Pennsylvania Institution for the Instruction of the Blind."

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of The Pennsylvania Industrial Home for Blind Women, from the decree of the Orphans' Court for the *County of Philadelphia,* dismissing their exceptions to the supplemental adjudication upon the second account of the executors, filed in the estate of Mary Shields, deceased.

Mary Shields died October 8, 1880, leaving a last will

[Appeal of the Pennsylvania Industrial Home for Blind Women.]

and testament, in which, as to the residue of her estate, she devised and bequeathed as follows :

"One full equal sixth part thereof unto the Deaf and Dumb Asylum, of Philadelphia, absolutely ; one other equal sixth part thereof unto the Institution for the Blind, of Philadelphia, absolutely ; one other equal sixth part thereof unto the Old Man's Home, of Philadelphia, absolutely," &c.

The executors filed a second account, showing in their hands for distribution, $13,066 65.

At the audit, February 9, 1882, before PENROSE, J., *William Chapin* testified, *inter alia,* in substance, as follows :

I am principal of the Pennsylvania Institution for the Instruction of the Blind, situated at the corner of Twentieth and Race streets. It is not commonly known as the Blind Asylum. Its popular and general name has always been "The Institution for the Blind." I was not personally acquainted with Mary Shields. She was a visitor to our store on the Asylum grounds. I did not see her there. I never knew her to make a contribution to our institution. I never received anything of the kind from her brother.

Cross-examined by Mr. Cadwalader :

Our institution has been in the habit of advertising its exhibition every week, twice a week. It is described in the advertisements as the Institution for the Blind. That advertisement is published twice a week in the *Ledger* and the *Inquirer.* The word "Instruction" is not inserted in it. The Industrial Home is limited to women. The Institution for the Instruction of the Blind has no limitations as to color, sex, or condition. It is the only institution in Pennsylvania for the blind.

Reëxamined by Mr. Sharpless :

I am aware that the charter of the Industrial Home reads : "Every person who shall annually pay to the treasurer of the Pennsylvania Industrial Home for Blind Women, on or before the first day of May, the sum of $1 or upwards, shall be a member of the said Pennsylvania Home for Blind Women, while such person shall contribute ; and every person who shall pay $20, shall be a member for life."

*Mary Gutekunst* testified in substance, *inter alia :*

I am a manager for the Industrial Home for Blind Women. This home is now located at the corner of Powelton avenue and Saunders avenue, in West Philadelphia. It was moved there from thirty-nine hundred

and something Locust street, in October, 1879. It is immediately opposite the Old Man's Home. I have known the decedent, Miss Shields, about four years. I had an interview with her at 429 North Seventh street, in her front parlor, on Tuesday before her death. I called on Miss Shields, not knowing she was a subscriber to our home. When I handed her the report she did not look at it, but said: "I am a subscriber to the Blind Asylum," or "Blind Institute." I think she said "The Blind Institute;" either the Blind Asylum or Blind Institute. It was the "Blind Institute." Then I corrected her, and I said to her: "Miss Shields, this is the Industrial Home for Blind Women." She said: "Yes, it is the one over in West Philadelphia." The report had the name on the back. She told me at the same time, that the lady who collected her subscription was not one of the managers, but that it was a Mrs. B. Then Miss Shields got talking about the institution, and she seemed to take quite an interest in it. She did not then, or at any other time in her conversation with me, refer to the other institution at Twentieth and Race. I called her attention to it, when she said the "Blind Institute." I said that was at Twentieth and Race, and when I said that, she said: "I don't mean that, I mean the one over at West Philadelphia." She had been a subscriber to our home since 1870 or 1871. She paid $1 a year, and her brother $1 a year, and, at his death, she doubled her subscription.

Mr. Sharpless offered in evidence the private memorandum-book of the testatrix, containing twelve entries of contributions to the Industrial Home, the first being "December 21, 1869, Industrial Home for Blind Women, $1;" and the last, "December 8, 1879, Industrial Home for Blind Women, $2." All of these entries were in this form except two in 1873 and 1874, which were "Home for the Blind, $1." Intermingled with them were entries of contributions to "Old Men's Home."

Counsel who drew her will testified that the name as it was written in the instrument was from a memorandum in her own hand. It was in evidence that she took the *Public Ledger* and that it contained through the year 1878 an advertisement as follows: "Institution for the Blind. Exhibition every Wednesday at half past three, P. M. Select music. Doors open at half past two. Admission, ten cents."

The auditing judge filed his report as follows:

"On behalf of the Industrial Home for Blind Women, it was contended by Messrs. Junkin and Sharpless that

the words of the will, ' the Institution for the Blind of
Philadelphia,' were used ·by the testatrix in a general
sense and as a descriptive merely ; that such words being
equally applicable to all institutions for the blind in Phil-
adelphia, there being several, the case was one of latent
ambiguity, to be determined, under well-settled princi-
ples, by parol evidence *dehors* the will.   To show that
the Pennsylvania Industrial Home for Blind Women was
the institution intended, it was proved that for a number
of years the testatrix had been one of its regular contrib-
utors ; that her contributions appeared in her own hand-
writing in the same book with those made to the Old
Man's Home—(admittedly one of her residuary legatees,
and mentioned in the will in the same paragraph with the
Institution for the Blind ;) that she had never been known
to contribute to The Pennsylvania Institution for the In-
struction of the Blind ; that the Old Man's Home and the
Industrial Home for Blind Women were both located in
West Philadelphia, and were naturally, therefore, asso-
ciated in the mind of the testatrix ; and that on one oc-
casion, two days before her death, she had spoken of the
Industrial Home for Blind Women as the "Blind Asy-
lum " or " Blind Institute."

Opposed to the claim, it appeared, however, that the
testatrix was not an officer or manager of the Industrial
Home for the Blind ; that she had never been known to
visit or to manifest special interest in it ; that her contri-
butions were only made when called for by the ladies
connected with the house ; and that they amounted in all
to about $15 during a period of eleven years.   It further
appeared that the book showing these and the contribu-
tions to the Old Man's Home, contained also contributions
to numerous other charitable or religious corporations
which do not appear as legatees in her will ; and that no
contributions were made in her lifetime to other charities,
as *e. g.* the Deaf and Dumb Asylum, &c., &c., which do.

Very little aid, therefore, is furnished to the claim of
the Industrial Home by the fact of these subscriptions,
or by its association, if such it can be called, in the same
book with the Old Man's Home ; and even that little en-
tirely disappears in view of other matters to be presently
mentioned.

The only additional fact adduced in support of their
claim by Messrs. Junkin and Sharpless was that, on a
single occasion, when, two days before her death, Miss
Gutekunst, a manager of the home, called to invite the
testatrix to become a contributor (not being aware that

she was already one), she referred to the Home as "the Blind Asylum," or "the Blind Institute;" the witness being not quite certain which, though inclining to the latter designation.

If this testimony, standing by itself, were of any importance whatever, its effect is wholly neutralized by the evidence furnished by the subscription-book of the testatrix, in which, while for 1873 and 1874, the only contribution appearing is to the "Home for the Blind," those made for 1869, '70, '72, '75, '76, '77, '78, '79, and '80 are in her own handwriting entered as made to the "Industrial Home for Blind Women."

With knowledge of the correct title of the Industrial Home for Blind Women and its habitual use by the testatrix thus established, it is impossible to believe that in an instrument of so much solemnity and importance as a will she would employ general and equivocal terms to describe an intended beneficiary with whose precise name she was so perfectly familiar. The names of her residuary legatees, it was proved by Mr. Thorn, by whom the will was prepared, were furnished to him by the testatrix in her own handwriting, and were inserted just as she gave them.

If it be conceded that the words of the will are descriptive merely, it seems clear from the evidence that the Industrial Home must be excluded from taking under them—if, indeed, a gift to an institution for "the blind" would not by its terms exclude an institution for a single class or sex, as against an institution for the blind generally, without qualification of class, sex, or color.

But the evidence left no doubt in the mind of the auditing judge that the words of the testatrix were not used in a general sense, but as a specific and correct designation of the intended object of her bounty. It was clearly shown that, while "The Pennsylvania Institution for the Instruction of the Blind" is the corporate name of the institution familiarly spoken of as the Blind Asylum, located at the corner of Race and Twentieth streets, in the city of Philadelphia, it is well known in the community as "The Institution for the Blind," the words "Pennsylvania" and "Instruction" being, for brevity, dropped out, just as is often the case with an individual having more than a single Christian name.

This appears from the testimony of Miss Gutekunst, which has already been referred to, but it was established beyond controversy by the production of the advertisements of the exhibition given by the pupils of the insti-

[Appeal of the Pennsylvania Industrial Home for Blind Women.]

tution on Wednesday of each week, which, for many years, have been published twice a week, in the *Public Ledger* (a paper shown to have been taken by the testatrix) and in the *Inquirer*—in which the title is thus uniformly given.

Upon the whole, it is clear that the only institution of the blind entitled under the will is that to which the award was made by the adjudication of the first account filed by the executor, viz: The Pennsylvania Institution for the Instruction of the Blind; otherwise known, as the testatrix has called it, as "The Institution for the Blind;" and the share withheld from distribution by the adjudication filed February 7, 1882, is accordingly now so awarded."

Exceptions to the above adjudication were thereupon filed by the Pennsylvania Industrial Home for Blind Women:

"That the learned judge erred and that new and material testimony had been discovered."

Upon these exceptions, the testimony of *Rebecca Hall Parker* was taken, who testified, *inter alia*, in substance:

I knew the decedent, Miss Mary Shields, in her lifetime. I was intimate with her. There was rarely a day passed that we did not see each other and sometimes oftener. I went with her to entertainments to the Pennsylvania Industrial Home for Blind Women. I know of her being interested in this Industrial Home for Blind Women, in West Philadelphia, by going with her that evening and by her telling me that evening that she was a subscriber to it. I never went with her to the entertainments of the Pennsylvania Institution for Instruction for the Blind, at Twentieth and Race streets, and never remember of her mentioning to me that Institution at all. If I knew her mind at all her sympathies went to working women and any who were in a struggling condition. I think she would rather have helped the one in West Philadelphia —Industrial Home—than the one at Twentieth and Race. I think so from her own kindly disposition towards those who were struggling along, and towards women in particular.

April 22, 1882. The Court dismissed the exceptions, HANNA, P. J., filing the following opinion:

"Whether testatrix, in the bequest to 'The Institution for the Blind of Philadelphia,' contemplated 'The Pennsylvania Institution for the Instruction of the Blind,'' or 'The Industrial Home for Blind Women,' as the beneficiary, is solely a question of fact. And neither institu-

tion being correctly designated, her intention is to be ascertained from the evidence. Her acts and declarations previous to and contemporaneous with the making of the will constitute the best evidence, and that which is alone admissible to explain and remove the ambiguity arising from the language employed.

The first-named institution is popularly known and designated for the sake of conciseness, even by its officers and managers, as 'The Institution for the Blind.' Its organization dates back many years, and it has not only a city, but State and National reputation. It is one of the public charities fostered by the Commonwealth. Being thus so well known, it is not strange that it is familiarly designated as 'The Institution for the Blind,'· or, in still more common parlance, as 'The Blind Asylum.' On the other hand, the foundation of the Home, exclusively for Blind Women, is of comparatively recent date. The testatrix, for a series of years, had been an annual subscriber toward its maintenance, and possessed an accurate knowledge of its corporate title   This is apparent from entries in her handwriting in a personal expense-book, wherein she included disbursements for benevolent objects and subscriptions to religious and charitable societies in which she was interested. But twice in eleven years she incorrectly makes use of the title, 'Home for the Blind,' while in every other instance employs the name, 'Industrial Home for Blind Women.' From this and other facts developed, it cannot be doubted that testatrix was well informed not only of the distinctive title, but the purposes of this deserving charity. And if it was her intention to include it as one of her residuary legatees, it would seem most natural she would indicate that intention in the same clear and unmistakable manner in which she had during many years recorded her contributions. But on the contrary, when she furnishes her counsel with a draft of her intended will, in her own handwriting, she indicates as an object of her beneficence 'The Institution for the Blind.'

In the absence of any statements and declarations of testatrix, or other equally satisfactory evidence of her intention that 'The Industrial Home for Blind Women' was the charity intended by her as the object of her bounty, and instead of using its corporate title, with which she was familiar, employed a name which, by common usage, had become to be generally applied to another and different institution, to indicate that intention we must reach the same conclusion as the auditing

judge.   We think the evidence fully sustains his finding, that 'The Pennsylvania Institution for the Instruction of the Blind' was in the mind of testatrix as one of her residuary legatees, and although inaccurately described, was intended in the use by her of the name 'Institution for the Blind.' After a consideration of all the testimony, including that submitted as after-discovered, we see no reason to disturb the finding of the auditing judge. All the facts have been carefully considered by him, and his conclusion, like the verdict of a jury, should not be set aside unless clear error be made to appear.

The exceptions are dismissed and the adjudication confirmed."

The Pennsylvania Industrial Home for Blind Women then appealed and assigned as error the dismissal of the exceptions.

*N. H. Sharpless* and *George Junkin* for appellant. The evidence shows that the testatrix meant the appellant to take under her will. If the evidence is not sufficient to show which institution was meant, the doctrine of *cy pres* should be applied, and the legacy distributed among all the institutions of Philadelphia whose objects bring them within the intention to benefit the blind.

*John Cadwalader* and *George W. Thorn* for appellee. The legatee can take under the name and description by which it is generally known : Newell's Appeal, 12 Harris, 197. This is not a case of latent ambiguity to be solved by parol evidence, but a bequest to appellee in its popular name : Tucker *v.* Aid Society, 7 Metc., 188 ; Winkley *v.* Kaime, 32 N. H., 268 ; Tudor *v.* Terrel, 2 Dana, 47 ; Institute *v.* Norwood, 1 Busb. Eq., 68 ; Allen *v.* Lyons, 2 Wash. C. C., 475 ; 39 Leg. Int., 258. If parol evidence is admissible, the evidence shows that testatrix intended the legacy for the appellees.

Where facts have been found by an auditor and approved by the Court below, this Court will not interfere, except for flagrant error : Mengas' Appeal, 7 Harris, 222 ; Bull's Appeal, 12 Harris, 288.

JANUARY 29, 1883.—PER CURIAM : While the language of the testatrix, in her bequest to "The Institution for the Blind of Philadelphia," does not correctly designate either the appellee or appellant, yet it comes nearer the former. The appellee is correctly designated as "Institution," a word not found in the name of the appellant.

[Phila. Nat. B'k *v.* Hilgert, Def't, and The Phila. Wareho'e Co., Gar.]

But what we think more convincing is the Court has found as facts that the testatrix well knew the correct name of the appellant, which she did not use, but did use the name by which the appellee was popularly and well known. If the decree which the Court made is not certainly right, there is an entire failure to prove it to be wrong.

Decree affirmed, and appeal dismissed, at the costs of appellant.